# IN RE PETITION FOR REHEARING AND RECONSIDERATION OF ORDER DISCHARGING ANTHONY LAUSCHE.
# ANTHONY LAUSCHE v. COMMISSIONER OF PUBLIC WELFARE.*

225 N. W. 2d 366.

November 1, 1974—No. 44591.

---

\* Certiorari denied, 420 U. S. 993, 95 S. Ct. 1430, 43 L. ed. 2d 674 (1975).

66

*Lapp, Lazar, Laurie & Smith* and *Benjamin J. Smith,* for appellant.

*Warren Spannaus,* Attorney General, *Thomas L. Fabel,* Deputy Attorney General, and *Tibor M. Gallo,* Special Assistant Attorney General, for respondent commissioner.

*Harlan L. Nelson,* County Attorney, and *Bernard L. Bodien,* Assistant County Attorney, for respondent Otter Tail County.

Heard before Sheran, C. J., and Kelly, Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from the order of an appeal panel dated July 3, 1973, pursuant to Minn. St. 253A.15, wherein it was ordered that the appellant, Anthony Lausche, upon release from Stillwater State Prison be returned to the Minnesota Security Hospital at St. Peter, Minnesota, and there be held under the jurisdiction of the medical director until the appellant could be released with reasonable safety under a program of supervision. We affirm.

Appellant Anthony Lausche has been in various mental and correctional institutions over a period of approximately 12 years. His present commitment commenced in 1969 when he was committed to the commissioner of public welfare as mentally ill and dangerous and was subsequently transferred from the Minnesota Security Hospital to an open setting at Brainerd State Hospital. While in this open setting at Brainerd he assaulted a girl in a tavern, and subsequently pled guilty to a charge of aggravated assault. This resulted in his incarceration at the State Prison

at Stillwater. During the incarceration a petition for his release from the commitment to the commissioner of public welfare was brought before the special review board pursuant to Minn. St. 253A.15, subd. 2(a). Following a hearing, the board recommended that appellant be discharged from his commitment as mentally ill and dangerous. The acting commissioner adopted this recommendation as his order. The county attorney of Otter Tail County then filed a petition for rehearing and reconsideration of the commissioner's order pursuant to § 253A.15, subd. 2(c). After the hearing, the panel of three probate judges reversed the commissioner's order and continued the commitment, ordering appellant to be returned to the state security hospital when his Stillwater term had been completed. This appeal was taken from that order. Minn. St. 253A.15, subd. 2(f). Since the appeal was taken, the appellant has been transferred in accordance with that order to the Minnesota Security Hospital, where he is now committed.

Three issues can be gleaned from the appellant's brief: (1) Is there evidence to support the appeal panel's determination that the appellant is mentally ill and dangerous under Minn. St. 1971, § 253A.02, subd. 3, and Minn. St. 253A.02, subd. 17? (2) What is the standard of proof and upon which party is the burden that appellant should or should not be discharged from commitment? (3) Is the order returning the appellant to Stillwater State Prison in effect a discharge from commitment?

(1) The pertinent parts of the applicable statutes are Minn. St. 1971, § 253A.02, subd. 3, which provides:

" 'Mentally ill person' means any person having a psychiatric or other disorder which substantially impairs his mental health and *who is in need of treatment or supervision.*" (Italics supplied.)

and Minn. St. 253A.02, subd. 17, which provides:

" 'A person dangerous to the public' means a person who is mentally ill or mentally deficient and whose conduct might rea-

sonably be expected to produce a clear and present danger of injury to others."

The appeal panel, pursuant to § 253A.15, subd. 2(c), stated as follows:

"This tribunal finds that the patient is suffering from a mental defect psychiatrically labelled a sociopath or a character disorder. That this defect is of such a nature and intensity that he cannot control his impulse to do violence and injury to other persons or property when subjected to stressful situations requiring the exercise of emotional restraint or control. Thus, on any occasion he may act impulsively without justifiable provocation to commit an assault upon others and is a serious danger or threat to society unless controlled or supervised."

The appellant focuses upon the phrase of the above statute "who is in need of treatment or supervision" to conclude that a finding that one is mentally ill can only lead to a commitment in a mental institution for treatment. In response, the commissioner of public welfare indicates that the key to this section is satisfied by the past and present treatment afforded Mr. Lausche. He has been placed in open hospitals and in programs of rehabilitation, and he has been discharged into the community. This last-named attempt was met by appellant's commission of an aggravated assault upon a woman, for which he was incarcerated. Further attempts are still being made toward his rehabilitation and reentry into society.

Therefore, treatment for mental illness comes in many forms, not always clearly medical in the common meaning of that word. Various programs and even supervision itself are properly regarded as treatment. Minn. St. 253A.17, subd. 9. With convincing evidence of mental illness upon the record, as well as the appellant's aggravated background through many years and incidents, the appeal panel was presented with ample evidence to find the appellant mentally ill and dangerous by applying the common meanings of the words of the statutes involved, with their ap-

plication to all opinions, medical and otherwise, and the other evidence before it.

We would like to strongly emphasize to all those involved in the mental commitment procedure that the ward's actual release should not be predicated upon a prevailing opinion that treatment will not help, that hospitalization would be in vain, and that therefore the ward should be released. If the patient is judged mentally ill and dangerous, the rights of the public must be considered. Those who are a danger to the public are released at times because technically there are no medical procedures that can change their possible character disorders or other symptoms. The determining question should be: If not institutionalized, will they be a danger to society? Then, every attempt should be made either to rehabilitate in a correctional institution or to apply modern therapy, medical or otherwise, in a medical or quasi-medical institution. At the present time there is no third alternative to our penal or medical institutions for the handling of some of these unfortunate and dangerous members of society.

In the instant case, the facts as presented evidence the multiple and varied programs available to rehabilitate the appellant. Possibly determinative is the fact that competent experts testified that if the appellant were released before the completion of his rehabilitation, he might react in a dangerous manner. Therefore, a granting of the discharge at this time would create the situation of no control over a perhaps premature release. There is, therefore, ample evidence to support the findings of the appeal panel.

(2) The appellant relies heavily upon the case of Lessard v. Schmidt, 349 F. Supp. 1078 (E. D. Wis. 1972), to support his contention that proof beyond a reasonable doubt that the appellant is mentally ill within the meaning of the statute is required before his commitment can be continued. Although this is a necessary standard to be employed with regard to the initial commitment of the alleged mentally ill person, we cannot extend it to supplementary proceedings, including petitions for discharge.

Rather, we must reaffirm our holding in the case of In re Restoration to Capacity of Masters, 216 Minn. 553, 13 N. W. 2d 487 (1944), where this court was faced with an appeal from a denial of a petition for restoration to capacity. The court reversed this denial, stating:

"The record here, however, affirmatively discloses that in arriving at its findings and conclusions the trial court placed too great a burden of proof upon the petitioners. * * * That she should assume the burden of proof to establish her restoration to capacity is perfectly proper, for the law rightfully presumes that a condition of feeble-mindedness or insanity once shown to exist will thereafter continue. We recognize that in committing the less fortunate members of society to our public institutions the courts are not penalizing them; yet a proper respect for our fundamental American concepts of liberty and freedom impels us to hold that these unfortunates have met the full measure of proof entitling them to a decree of restoration to capacity when they prove their present mental capacity by a fair preponderance of the evidence." 216 Minn. 562, 13 N. W. 2d 492.

The standard we are therefore applying in factual settings such as the one before us is the civil standard of a fair preponderance of the evidence. To apply the higher standard to these proceedings would establish a procedure in which every patient committed as mentally ill and dangerous would require a recommitment every few months at his insistence. This was not the legislative intent as expressed in the Minnesota Hospitalization and Commitment Act, Minn. St. 1971, Ch. 253A. Nor does the appellant obtain such a right through constitutional guarantees of due process.

Inasmuch as the petition for rehearing and reconsideration was instituted by the county attorney following a discharge of the appellant's commitment by the special review board, the burden of this standard should be upon the petitioner to establish by a fair preponderance of the evidence that the condition of the

party is still that which warrants further commitment as mentally ill and dangerous. That burden has been satisfied and there is ample evidence to warrant an affirmance of this continued commitment.

(3) In this case the appellant is under commitment to both the commissioner of public welfare and the commissioner of corrections. The commissioner of public welfare has the express statutory authority to transfer patients to a "suitable" institution without disturbing a commitment. Minn. St. 246.14. The appellant, on the other hand, cites § 253.21 to support his contention that the commitment must be discharged. However, that statute, as interpreted, was designed to reach situations where an inmate of a prison subsequently develops a mental illness, not that set of facts presented here. See, Opinion Attorney General, No. 328-A, Oct. 26, 1935; State ex rel. Guren v. Grimes, 245 Minn. 241, 71 N. W. 2d 885 (1955). Since both proceedings are in accordance with due process of law, one commitment does not disturb the other.

Finding no further genuine issues, we affirm the appeal panel. Affirmed.