John H. McGUIRE, Appellant,

v.

C & L RESTAURANT INC.,
etc., Respondent,

LeAn's Inc., et al., Respondents.

No. C6–83–146.

Supreme Court of Minnesota.

March 16, 1984.

John M. Steele, Minneapolis, for appellant.

James Galman, St. Paul, for LeAn's Inc.

Peter E. Lind and Jeffrey M. Bauer, Minneapolis, for C & L Restaurant.

KELLEY, Justice.

In an action against respondent C & L Restaurant, Inc., a Minnesota corporation doing business as Southfork Bar, for personal injury damages under Minn.Stat. § 340.95 (1980) (the Minnesota Civil Damage Act), appellant received a verdict against respondent C & L Restaurant in excess of $250,000.[1] Following post-trial motions, the trial court applied the "damage cap" provided in section 340.95 and limited C & L Restaurant's obligation to pay appellant's damages to $250,000. On appeal, appellant contends that the "damage cap" provision of the statute is unconstitutional because it deprives him of equal protection of the law guaranteed by the United States and Minnesota Constitutions. Respondent, by notice of review, challenges certain trial court rulings. Because we conclude the "damage cap" provision of section 340.95 as it existed in 1981 is unconstitutional, we reverse.

Respondent C & L Restaurant was a corporation owned by Stanley and Mary Lynn and Jerome and Bibiana Cassidy. Thirteen days before the incidents giving rise to this action, it had purchased a bar known now as the Southfork Bar located on Highway 3 in Eagan, Minnesota. Elmer Scott went to the Southfork Bar at approximately 4 p.m. on June 29, 1981. He was a frequent customer and, through a corporation partially owned by him, a former proprietor of the bar. On that afternoon he took his "usual" seat at the bar where he was ·joined by friends. Between 4 and 6 p.m., the Southfork Bar served two drinks for the price of one. Mary Lynn bartended until 6 p.m., during which time she served Scott at least four drinks. After 6 p.m., Kim Eddy served him two or three drinks. The exact number of drinks served to Scott cannot be determined, but it seems clear from the evidence he consumed at least 10 drinks containing intoxicating liquor. To one observer he appeared intoxicated by 7:15 p.m. Scott himself admitted that he had between 10 and 20 drinks that evening prior to the occurrence of the accident giving rise to this lawsuit.

Around 8 p.m., Scott drove a truck owned by LeAn's Inc. from the Southfork Bar parking lot and turned east onto Highway 3. He intended to make a left turn onto Highway 149. To do so, he slowed down and pulled into the left-turn lane so that the front of the truck protruded 2 or 3 feet into the on-coming traffic lane. Appellant McGuire and his fiancee, Cheryl Wilebski, were traveling west on Highway 3 on a motorcycle approaching the intersection. As the motorcycle, after slowing down, continued through the intersection, Scott turned into the path of the motorcycle and hit it broadside. Wilebski was thrown from the motorcycle to the cement median.

---

1. Appellant McGuire and Cheryl Wilebski brought separate actions against respondent C & L Restaurant for damages resulting from illegal sale of intoxicating liquor to Elmer Scott. They likewise commenced separate actions in negligence against Elmer Scott and LeAn's Inc., which owned the vehicle Scott was driving at the time of the accident giving rise to these suits. In the Wilebski dram shop action, C & L Restaurant commenced a third-party action against appellant McGuire seeking contribution or indemnity. The trial court consolidated these actions for trial on all issues. Wilebski also brought an action in negligence against McGuire which was settled prior to trial by execution of a Pierringer release. At trial Scott and LeAn's Inc. admitted negligence and intoxication. The jury found both Scott and C & L Restaurant causally at fault, awarded damages of $4,349,000 to McGuire, and apportioned fault 55% to Scott and 45% to C & L Restaurant. (It likewise awarded damages of $360,000 to Wilebski. Though C & L Restaurant's obligation to pay its share of those damages was limited to $250,000 by post-trial order, Wilebski does not appeal.)

The motorcycle, with McGuire on it, was pinned in front of the truck. Scott continued driving approximately 300 feet and then appeared to slow down, after which he accelerated the truck and proceeded down Highway 149 for approximately .9 of a mile with the motorcycle and driver still pinned in front. He did this despite hearing a loud scraping noise and observing heavy smoke caused by the trapped motorcycle dragging on the pavement. A number of drivers attempted to stop Scott by honking horns or by flagging him down. Fearing that he would be charged with driving while under the influence, Scott continued to drive until he became stuck in gravel a short distance from his home. When he got out of the truck, he observed the front end and saw motorcycle and driver pinned beneath his truck. Thereafter, Scott walked to his house without rendering any aid to the motorcycle driver.

In the accident McGuire sustained catastrophic injuries. He was hospitalized for 3 months in the burn unit at St. Paul-Ramsey Medical Center where he underwent multiple skin grafts designed to repair 40% of his body's surface tissue which had been scraped away. Besides this permanent scarring, McGuire suffers from permanent loss of normal range of motion in all extremities, below the knee amputation of his left leg, 100% loss of use of his right arm, and massive muscle and tendon injuries of his right foot. The jury's damage award of $4,349,000 reflected the severity of McGuire's injuries.

On the jury findings the trial court originally ordered a joint and several judgment against Scott and C & L Restaurant in the amount of $4,349,000 but provided that C & L Restaurant was "obligated" to pay only $338,000 toward the satisfaction of the judgment. Following a post-trial motion, the trial court, recognizing the statutory limitation of recovery contained in Minn. Stat. § 340.95 (1980),[2] ordered that C & L Restaurant "shall be obligated to [pay] $250,000 towards satisfying the * * * award."

On appeal appellant asserts that the "damage cap" in the statute limiting his recovery against the bar to $250,000 violated the equal protection clauses of the United States and Minnesota Constitutions— U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 2. Appellant argues that had his injuries resulted from either an illegal sale of non-intoxicating beverages (3.2 beer) or an illegal sale of intoxicating liquor by a vendor not subject to section 340.95, he could have recovered his full damages; whereas, since his injuries resulted from an illegal sale of intoxicating liquor by a vendor covered by section 340.95, he remains undercompensated.

Before addressing this issue, we must first consider respondent's[3] contention that appellant may not properly challenge before this court the constitutionality of the "damage cap" of section 340.95. Respondent claims appellant at no time asked the trial court to rule on the constitutionality of the provision. We believe respondent's contention is meritless. Appellant notified the Minnesota Attorney General of his intention to challenge the statute's constitutionality both before trial and on appeal.[4] In each instance the Attorney General waived his right to intervene in the matter. *See Automotive Merchandise, Inc. v.*

---

**2.** Minn.Stat. § 340.95 (1980) insofar as applicable read: "No recovery shall be had in any action or actions pursuant to this section in excess of $250,000 for all damages to one person * * * arising out of a single instance of the illegal sale or barter of intoxicating liquor." This provision was deleted from the statute by Act of March 22, 1982, ch. 528, § 7, 1982 Minn. Laws 978.

**3.** We will refer to C & L Restaurant, Inc. as "respondent" throughout. Although Elmer

Scott and LeAn's, Inc. are also respondents to this appeal, they support appellant in urging us to hold unconstitutional the "damage cap" of Minn.Stat. § 340.95 (1980).

**4.** Notice must be served upon the attorney general pursuant to Minn.R.Civ.P. 24.04 and Minn. R.Civ.App.P. 144 when the constitutionality of an act of the legislature is questioned in any action to which the state is not a party.

*Smith,* 297 Minn. 475, 212 N.W.2d 678 (1973) (per curiam).

Proper notification notwithstanding, if the constitutionality of the "damage cap" were at no time challenged or litigated in the trial court, appellant would generally be barred from challenging it here. *See Hampton v. Hampton,* 303 Minn. 500, 501, 229 N.W.2d 139, 140 (1975); *Automotive Merchandise, Inc.,* 297 Minn. at 477, 212 N.W.2d at 679–80. It seems clear that appellant did, in fact, challenge the statute's constitutionality in the trial court. He joined plaintiff Wilebski in moving that the trial judge disregard the damage cap because of its unconstitutionality. The trial court reserved a ruling until a later time but apparently never explicitly ruled on it. After respondent moved to limit its "responsibility" to $250,000 in a post-trial motion, appellant moved the trial court to declare the "damage cap" unconstitutional. In granting respondent's motion for limitation of "responsibility," the trial court did consider appellant's motion and stated the amended order, from which this appeal is now taken, "will give us a clear question, a clear point as to what is being done, and if the Supreme Court wants to go over the cap, is [sic] invalid, so be it."[5]

From the foregoing, we conclude the constitutional issue and the trial judge's resolution were implied in the lower court. Moreover, the parties have had adequate time to brief constitutional issues and the interests of justice require consideration of such issues by this court. Under such circumstances, we will recognize an exception to the rule and consider constitutional issues raised, even if for the first time, on appeal. *See, e.g., Tischendorf v. Tischendorf,* 321 N.W.2d 405, 410 (Minn. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983).

1. In Minnesota the early common law did not permit an action against a liquor vendor for injuries resulting from the vendor's illegal sale of intoxicating liquor. *See Strand v. Village of Watson,* 245 Minn. 414, 419, 72 N.W.2d 609, 614 (1955); *Beck v. Groe,* 245 Minn. 28, 33–34, 70 N.W.2d 886, 891 (1955). In 1911, the legislature enacted the Civil Damage Act, also known as the Dram Shop Act.[6] This Act created a new cause of action against liquor vendors. The Civil Damage Act, now Minn.Stat. § 340.95, preempted all other actions that might impose liability on liquor vendors for illegal sales and provided the exclusive remedy in such actions. *See Fitzer v. Bloom,* 253 N.W.2d 395, 403 (Minn.1977).

At the time of its enactment, the Civil Damage Act applied to the sale of all intoxicating liquors which included both 3.2 beer and stronger liquor. In 1933, the Minnesota legislature redefined "intoxicating liquors" so as to exclude 3.2 beer from the definition to permit vendors to sell 3.2 beer without violating prohibition laws. *See Wegan v. Village of Lexington,* 309 N.W.2d 273, 279 (Minn.1981). Thereafter, in Minnesota there existed two classes of liquor vendors: vendors of "non-intoxicating liquor" (3.2 beer) and vendors of "intoxicating liquor." Only the latter class remained subject to liability under the Civil Damage Act. Although prohibition was repealed in December 1933, U.S. Const. amend. XXI, § 1, these legislative classifications remained until 1982, at which time the legislature again amended the Civil Damage Act to govern liability of vendors of both "intoxicating" and "non-intoxicating" liquor. Act of March 22, 1982, ch. 528, § 7, 1982 Minn.Laws 978.

For 40 years these classifications remained unquestioned by this court until *Trail v. Christian,* 298 Minn. 101, 213

---

**5.** As indicated, at that point it seems clear the trial judge intended to uphold the constitutionality of the damage cap. However, he continued by noting that appellant might want to challenge the amended order, bring in the attorney general, and argue the constitutional issue, in which case, the trial judge clearly indicated he would affirm the amended order, following

which an appeal could be taken to this court. Instead, appellant chose to bring this appeal without taking further action before the trial court.

**6.** Act of April 18, 1911, ch. 175, 1911 Minn.Laws 221.

N.W.2d 618 (1973). In that case the court examined the issue whether a liquor vendor could be held liable for an illegal sale of 3.2 beer. After concluding that the illegal sale of 3.2 beer did not permit the assertion of a claim for damages under the Civil Damage Act, the court reassessed the common law rule of non-liability and, for the first time, recognized a common law negligence action against a vendor of 3.2 beer. *Trail,* 298 Minn. at 111, 213 N.W.2d at 624.[7]

By holding that a common law negligence action existed against vendors of 3.2 beer for illegal sales in *Trail,* while simultaneously adhering to prior holdings that the Civil Damage Act provided the only remedy against Minnesota vendors of "intoxicating liquor," the court created an anomalous situation. All actions against "intoxicating liquor" vendors were governed by the Civil Damage Act which, after 1977, contained a notice of claim provision, a 1-year statute of limitations, and a cap on damages recoverable. On the other hand, all common law actions against vendors of "non-intoxicating" 3.2 beer, or other vendors not subject to the Civil Damage Act, could be commenced without serving a notice of claim within the general 6-year statute of limitations, and could be prosecuted to recover full damages not subject to any statutory cap.

This disparate treatment of victims injured by persons illegally sold intoxicants was challenged on equal protection grounds in *Wegan.* This court held that "the commencement-of-suit and notice-of-claim provisions at issue violate the equal protection clause of the United States and Minnesota Constitutions." *Wegan,* 309 N.W.2d at 281. Although in *Wegan* it was unnecessary for the court to address the

"damage cap" issue here presented, we expressly withheld approval of the legislative cap on damages in the Act and alluded to potential constitutional problems with such a cap. *Wegan,* 309 N.W.2d at 280–81, n. 12.

The "damage cap" provision of section 340.95 was first inserted in the Act in 1977[8] in connection with a number of other changes urged by the liquor industry in an attempt to attract more dram shop insurers to offer insurance coverage to liquor vendors and to reduce dram shop liability insurance costs. *Hearing on H.F. 676 (S.F. 162) Before the Senate Judiciary Committee* (May 6, 1977). Its existence, however, was short-lived. In 1982, the legislature amended the Civil Damage Act in response to this court's decision in *Wegan*[9] to remove the notice of claim and limitation provisions. In addition, apparently in response to expressed concerns that the damage cap was likewise unconstitutional, the legislature removed the cap. *Hearing on S.F. 358 Before the Commerce & Economic Development Committee* (March 2, 1982).

 The 1977 statute, of course, bears a presumption in favor of constitutionality. *Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 142 (Minn.1980). We proceed with extreme caution before declaring a statute unconstitutional and do so only when absolutely necessary. *Schwartz v. Talmo,* 295 Minn. 356, 363, 205 N.W.2d 318, 323 (1973), *appeal dismissed,* 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973). A party challenging a statute on constitutional grounds has the onus of demonstrating beyond a reasonable doubt that the statute violates a provision of the constitution. *Contos v. Herbst,* 278 N.W.2d 732, 736

---

7. In later cases we expanded this modern common law rule to include actions against other liquor vendors not subject to the Civil Damage Act. In *Blamey v. Brown,* 270 N.W.2d 884 (Minn.1978), *cert. denied,* 444 U.S. 1070, 100 S.Ct. 1013, 62 L.Ed.2d 751 (1980), *overruled on jurisdictional grounds, West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676 (Minn.1983), we held common law actions in negligence could be brought against non-resident liquor vendors. Generally, a common law negligence

action can be brought if the Civil Damage Act is inapplicable. *See Fitzer v. Bloom,* 253 N.W.2d 395, 403 (Minn.1977).

8. Act of June 2, 1977, ch. 390 § 1, 1977 Minn. Laws 887. *See supra* note 2.

9. Act of March 22, 1982, ch. 528, § 7, 1982 Minn.Laws 978. The claim in the instant case arose in 1981. Thus, the statute containing the "damage cap" is applicable.

(Minn.1979), *appeal dismissed sub nom., Prest v. Herbst,* 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979).

In the instant case the parties agree that the appropriate standard of review is the "rational basis" test. *See Wegan,* 309 N.W.2d at 280. To survive an equal protection challenge under the test, three factors must be satisfied:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Guilliams,* 299 N.W.2d at 142 (quoting *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979)). We noted in *Wegan* that with respect to the notice of claim and limitation provisions the Civil Damage Act was "fatally defective" because it did not satisfy the first and second *Guilliams* factors. *Wegan,* 309 N.W.2d at 280. Compelled by the same principles of constitutional construction in *Jones v. Fisher,* 309 N.W.2d 726, 728 (Minn.1981), we held a spouse of one who becomes intoxicated by drinking 3.2 beer has a common law negligence action against the vendor, thus placing liability of 3.2 beer vendors on the same footing as vendors covered by the Civil Damage Act. Likewise, in *Johnson v. Moberg,* 334 N.W.2d 411 (Minn.1983), we applied the statutory "obviously intoxicated" standard to both common law actions against 3.2 beer vendors and actions brought under the Civil Damage Act.

Whether the legislature may constitutionally impose a "damage cap" on recoveries in certain types of actions is not the question before us. The issue here, rather, is whether the legislative classification imposing a "damage cap" on Civil Damage Act recoveries, while not imposing such a cap on damages awarded against a 3.2 beer vendor is "genuine or relevant to the purpose of the law." Respondent claims that the classification is "genuine or relevant." It suggests the purposes of the damage cap are (1) to balance the burdens imposed upon tavern owners by enactment of the Civil Damage Act; (2) to limit the costs and exposure of liquor vendors under the Act; (3) to facilitate the availability of liquor liability insurance; and (4) to protect the public treasury in the case of dram shop actions brought against a municipal liquor store. Respondent then argues that the legislative classifications are relevant to those purposes in two ways. First, it contends that since the class of intoxicating liquor vendors includes municipal liquor vendors, the classification serves a rational purpose by protecting municipalities, and therefore the public, from devastatingly large judgments. Second, it contends that intoxicating liquor vendors attract a greater number of persons who abuse alcohol than do 3.2 beer vendors and thus are exposed to more alcohol abuse and resulting dram shop litigation. Therefore, respondent argues, if liability of intoxicating liquor vendors is limited, premiums for liability insurance, which presumably would otherwise be greater as a result of greater litigation, will be reduced accordingly, and the availability of liability insurance to protect the public will be increased.

As to respondent's first argument, even if we assume that the legislature may legitimately limit damages from claims brought against a municipal liquor store, the classification in the statute is overbroad in achieving its purpose. The legislature did not draw its line between municipal and non-municipal liquor vendors. Yet, if the legislature had seriously intended only to limit municipal liability, that is where it would have drawn the line. The inclusion of non-municipal vendors in the class for the reason asserted here by respondent would cause the class to fail constitutionally as being overbroad. More-

over, we note the present case does not involve a municipal liquor vendor. The disparity in this case is between liability of private commercial intoxicating and non-intoxicating liquor vendors.

Respondent's second argument addresses the difference between 3.2 beer vendors and strong liquor vendors. We acknowledge that we do not have the data before us to substantiate respondent's claim that strong liquor vendors are exposed to greater liability and higher insurance premiums than 3.2 beer vendors so as to justify limited liability; nor could we independently evaluate this data and substitute our judgment for that of the legislature. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470, 101 S.Ct. 715, 727, 66 L.Ed.2d 659 (1981). However, it seems significant to us that this court has heard a number of cases involving 3.2 beer vendors in the past 10 years. *See, e.g., Johnson v. Moberg*, 334 N.W.2d 411 (Minn.1983); *Jones v. Fisher*, 309 N.W.2d 726 (Minn. 1981); *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973). *See also Beck v. Groe*, 245 Minn. 28, 70 N.W.2d 886 (1955). This suggests to us that 3.2 beer vendors are not exempt from litigation. Moreover, this court has long recognized that, in fact, one can become intoxicated by drinking 3.2 beer. *Trail v. Village of Elk River*, 286 Minn. 380, 388, 175 N.W.2d 916, 921 (1970). The damage resulting from abuse of 3.2 beer can be as devastating as damage resulting from abuse of stronger liquor. Thus, 3.2 beer vendors are exposed to the same potential liability as strong liquor vendors. It seems incongruous to us to limit the liability of one class while imposing unlimited liability on the other class when potential liability is equal. Keeping in mind the remedial purpose of the Civil Damage Act, it seems even more incongruous to us to limit the liability of the class who, according to respondent's own assessment, is subject to greater alcohol abuse

and should therefore be provided with a greater incentive to curb that abuse.

When the statutory "damage cap" is examined from the perspective of the innocent persons injured by intoxicated persons, the classifications appear even more irrational and arbitrary. Those injured by persons illegally furnished 3.2 beer can seek full compensation, without limitation on amount; those injured by persons illegally furnished "intoxicating liquor" may or may not, as here, receive full damage compensation. As we noted in *Wegan:*

> An injured person cares little whether the driver who causes his injuries became intoxicated as a result of consuming 3.2 beer or stronger liquor. Indeed, a lay person unable to obtain just compensation because of the peculiarities of Minnesota's Dram Shop Law could justifiably conclude that he was the victim of artificial legal word games.

*Wegan,* 309 N.W.2d at 280.

Moreover, as the present case graphically illustrates, severely injured victims receive only limited compensation for their injuries, while those less severely injured may gain full recovery in damages. This incongruous result conflicts with the legislature's policy determination that the liquor industry should bear the cost of injuries caused by the consumption of intoxicating liquor when there have been illegal sales.

Thus, we conclude that the legislative classification providing a "damage cap" on recoveries against an "intoxicating liquor" vendor and not on recovery against a 3.2 beer vendor are neither genuine nor relevant to the purpose of the law. Further, from the standpoint of the victims it is arbitrary and fanciful. Thus, the first two factors of *Guilliams* have not been satisfied. Therefore, we hold the "damage cap" in Minn.Stat. § 340.95 (1980) unconstitutionally deprives victims of equal protection of the laws.[10]

10. We conclude that even if the classifications would not have violated the United States Constitution, the classifications still would violate the equal protection guarantee of our state Constitution.

A. Respondent urges us, if we find the "damage cap" unconstitutional, to apply the statutory limitation to 3.2 beer vendors rather than strike the cap from the Civil Damage Act. While this court can strike a severable statutory provision if found to be unconstitutional and void, Minn.Stat. § 645.20 (1982), we cannot add language to a statute in order to render it constitutionally permissible. *Thompson v. Estate of Petroff*, 319 N.W.2d 400, 407 (Minn.1982). To grant respondent's request to sustain the statutory "damage cap," we would have to add language to the Civil Damage Act to make it applicable to non-intoxicating liquor vendors. This we decline to do.

B. Finally, respondent argues that in the event of our holding the "damage cap" of section 340.95 unconstitutional, the rule of unlimited liability of intoxicating liquor vendors should apply prospectively only. Respondent relies on *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). There we abrogated the substantive tort law that sovereign immunity was a defense available to state subdivisions, but we made the ruling prospective because the school district had relied upon the existence of the immunity defense and had not had the opportunity to secure liability insurance. In so doing, this court recognized an exception to the general rule providing that when the court prospectively overrules a rule of law, the new rule is applied to the case before the court and to claims arising after the date of the overruling decision. *Beaudette v. Frana*, 285 Minn. 366, 173 N.W.2d 416 (1969); *Silesky v. Kelman*, 281 Minn. 431, 161 N.W.2d 631 (1968); *Balts v. Balts*, 273 Minn. 419, 142 N.W.2d 66 (1966). *See generally* Note, *The Retroactivity of Minnesota Supreme Court Personal Injury Decisions*, 6 Wm. Mitchell L.Rev. 179

(1980). Assuming that respondent had obtained insurance coverage only to the statutory limit, a fact we do not know, undoubtedly there is the appearance of injustice because the legal ramifications of its action were unpredictable at the time of purchase. However, the same could be said of the defendants in the cited cases. Moreover, prospectively declaring the "damage cap" unconstitutional would ignore the law's policy of providing incentive for challenging unconstitutional statutes. *Wegan*, 309 N.W.2d at 283 (Amdahl, J., concurring specially). Finally, if the court finds a statute unconstitutional, the statute is not a law; it is just as inoperative as had it never been enacted. *See State v. One Oldsmobile Two-Door Sedan*, 227 Minn. 280, 35 N.W.2d 525 (1948); *Gamble-Robinson Co. v. Pennsylvania Railroad Co.*, 157 Minn. 306, 196 N.W. 266 (1923). Therefore, it follows that our decision that the "damage cap" is unconstitutional precludes our holding that this ruling should be applied only prospectively.

2. By notice of review, respondent assigns six alleged errors of law during proceedings before the trial court.[11]

A. Respondent moved for a bifurcated trial on liability and damage issues claiming that failure to bifurcate would prejudice respondent as to the dram shop liability issue. After carefully considering the matter, the trial court denied the motion. The trial court had wide discretion in deciding whether or not to grant separate trials, and its ruling will not be disturbed absent a clear showing of abuse of discretion. *Chicago, Rock Island & Pacific Railroad Co. v. Williams*, 245 F.2d 397 (8th Cir.1957), *cert. denied*, 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63 (1957). *See also Fitzer v. Bloom*, 253 N.W.2d 395 (Minn.1977). We find no abuse of discretion here. Even had there been separate

---

11. Appellant claims the assignment of errors of law are not within the scope of review provided in Minn.R.Civ.App.P. 106. We reject that claim. *See Jangula v. Klocek*, 284 Minn. 477, 488, 170 N.W.2d 587, 594 (1969). Respondent was willing to accept a capped judgment rather than move for a new trial below and undergo the

risk, expense, and delay incident to that trial. By taking this appeal, appellant forced respondent to participate in these appellate proceedings. In the interests of judicial efficiency, we believe it advisable to resolve all controversies between these parties at this time.

trials, the jury could not have been insulated from the horrible details of the accident. The jury would have seen appellant in the courtroom. His injuries were obvious.

■ B. After hearing about the accident, Stan Lynn, one of the owners of C & L Restaurant, Inc., drove to the scene where he learned that Scott's truck had been involved. After he returned to the bar, Scott's personal attorney came into the bar and told Lynn that neither Lynn nor his employees should talk about the events surrounding the accident unless they knew what they were talking about. Thereafter, Lynn held a meeting to convey this message to his employees. The trial judge admitted testimony concerning these events. Ordinarily, evidentiary rulings are within the sound discretion of the trial judge. *Lines v. Ryan,* 272 N.W.2d 896, 902 (Minn.1978); *Weiby v. Wente,* 264 N.W.2d 624, 627 (Minn.1978). The rationale advanced by appellant for admission of this testimony was that it implied to Lynn knowledge of Scott's intoxication before the accident. While we entertain doubts about the admissibility of this testimony and while generally such testimony would be inadmissible, in this case in light of the overwhelming evidence of Scott's intoxication at the bar, we conclude it was not prejudicial error to admit this evidence.

■ C. At trial appellant's counsel cross-examined Thomas Lynn, a bartender at Southfork Bar. Lynn testified he had never served alcohol to anyone in the bar who was drunk. Counsel then introduced a prior statement made by Lynn in another proceeding where he had admitted serving intoxicated patrons. Respondent claims that this was improper impeachment. We agree. It was impeachment on an immaterial matter. No claim was made that Lynn ever served Scott on the evening of the accident. Although we deem the issue a close one, we conclude the trial court did not clearly abuse its discretion, and in any event, the admission of the statement in the context of the entire trial was harmless.

■ D. Prior to trial Wilebski and McGuire executed a Pierringer release. The trial judge refused to admit evidence of the release and refused to allow any questions regarding Wilebski's claim against appellant. The extent to which a settlement between some, but not all, parties to litigation should be disclosed to the jury rests in the sound discretion of the trial court. *Frey v. Snelgrove,* 269 N.W.2d 918, 922 (Minn.1978). In this case there was no abuse of discretion. McGuire's negligence was submitted to the jury; at least one of the attorneys representing a party adverse to McGuire admitted McGuire was not negligent; and independent evidence by an impartial witness indicated no negligence on the part of McGuire. In short, there was more than sufficient evidence to establish that McGuire did not negligently operate the motorcycle as the jury so found. The only purpose for admission of evidence concerning the settlement in this case is that it might have tended to establish McGuire's negligence. Offered solely for this purpose, this evidence would have been inadmissible. Minn.R.Evid. 408.

■ E. At trial respondent requested, and the trial court denied, the giving of the JIG II, 142 G–S (2d ed. 1974) superseding cause instruction. Under the facts of this case, such instruction was not only inappropriate but failure to give it would not be prejudicial since the jury found no punitive damages against Scott. Punitive damages, of course, must be based upon conduct willfully indifferent to the rights or safety of others. Minn.Stat. § 549.20, subd. 1 (1982). Given that jury finding, Scott's behavior could not have been a superseding cause.

Accordingly, we hold that the "damage cap" provision found in Minn.Stat. § 340.95 (1980), as it existed in 1981, was unconstitutional. We further hold that respondent's assignment of errors do not justify the granting of a new trial. We remand to the trial court for entry of judgment based

upon the answers the jury gave to interrogatories on the special verdict.

Reversed and remanded.