**Myles REOME, petitioner, Appellant,**

v.

**Leonard W. LEVINE, Commissioner of Public Welfare, Respondent.**

**No. C3–85–1758.**

Court of Appeals of Minnesota.

Dec. 24, 1985.

Review Denied Feb. 19, 1986.

Jon Duckstad, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Gary A. Van Cleve, Sp. Asst. Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Douglas J. McClellan, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and NIEREN-GARTEN, JJ.

## OPINION

LESLIE, Judge.

Reome appeals the August 4, 1985 amended findings, conclusions and order of the supreme court appeal panel, affirming the Commissioner's denial of Reome's petition for discharge from his commitment as mentally ill and dangerous. He argues the statutory discharge criteria are unconstitutional. We affirm the panel's decision.

## FACTS

Reome was committed to the Minnesota Security Hospital as a mentally ill and dangerous person on November 5, 1982. His 1983 petition for discharge from commit-

ment was denied by the Commissioner, on recommendation of the special review board. The Commissioner's decision was appealed to the supreme court appeal panel. The panel found Reome was not mentally ill and ordered him discharged.

On appeal to this court, we affirmed, finding the discharge criteria of Minn.Stat. § 253B.18, subd. 15 (1982) must be read in conjunction with the definition of a person mentally ill and dangerous to the public. *See* Minn.Stat. § 253B.02, subd. 17 (Supp. 1983), *Reome v. Levine,* 350 N.W.2d 428 (Minn.Ct.App.1984) (*Reome I*). The supreme court granted a petition for further review and remanded the matter to us for reconsideration in light of its opinion in *Enebak v. Noot,* 353 N.W.2d 544 (Minn. 1984), issued after our opinion in *Reome I. Reome v. Levine,* 361 N.W.2d 29 (Minn. 1985).

On remand, we vacated *Reome I* and instructed the appeal panel to make specific findings on the discharge criteria set forth in the statute. *Reome v. Levine,* 363 N.W.2d 107 (Minn.Ct.App.1985, *pet. for rev. denied,* April 18, 1985) (*Reome II*).

In his petition for further review of *Reome II,* appellant for the first time argued the statute is unconstitutional. The supreme court denied review and the appeal panel reconsidered the matter. By amended findings, conclusions and order on August 4, 1985, the panel again found Reome is not mentally ill, but has an antisocial personality, that he "is capable of making an acceptable adjustment to open society," but "is apt to be involved in criminal behavior in the future and is dangerous to the public," and that he is not in need of further inpatient treatment and supervision.

The appeal panel concluded Reome had not satisfied the statutory criteria and was not entitled to discharge. In an unincorporated memorandum, the panel noted Reome had not previously contended Minn.Stat. § 253B.18, subd. 15 is unconstitutional. The panel further noted the matter had been remanded solely for factual findings and did not address the constitutional issue, but urged this court to consider the claim. On appeal, Reome does not dispute the panel's findings, but argues the statute is unconstitutional.

## ISSUES

1. Is appellant's challenge to the constitutionality of Minn.Stat. § 253B.18, subd. 15 properly before this court?

2. Is the statute unconstitutional on its face as an improper delegation lacking adequate procedural safeguards?

3. Does the statute deprive appellant of due process or equal protection, thereby rendering it unconstitutional as applied?

## ANALYSIS

### I.

■ Appellant first argued the statute governing discharge is unconstitutional in his petition for further review of *Reome II.* "[I]f the constitutionality of [a statute] were at no time challenged or litigated in the trial court, appellant would generally be barred from challenging it here." *McGuire v. C & L Restaurant, Inc.,* 346 N.W.2d 605, 610 (Minn.1984). An exception to this general rule may be made when the appellant has previously raised the constitutional issue below and a ruling can be inferred from the trial court's action. *Id.* That is not the case here.

However, if this court dismisses this appeal for failure to preserve the issue, Reome could presumably raise the constitutional issues by again petitioning for discharge from his commitment. "Moreover, the parties have had adequate time to brief constitutional issues and the interests of justice require consideration of such issues by this court." *Id.*

### II.

A patient committed as mentally ill and dangerous

shall not be discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the special

review board, that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision. Minn.Stat. § 253B.18, subd. 15. (The 1982 statute, which governs the petition in this case is identical to the 1984 provision.) The board and Commissioner must also consider "whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the conditions do not exist, the discharge shall not be granted." *Id.*

■ Reome argues the statute impermissibly delegates legislative power to the special review board without adequate procedural safeguards, since the Commissioner's decision to discharge is dependent upon the requisite showing *and* a favorable recommendation from the board. This argument fails for two reasons.

First, legislative delegation is not *per se* impermissible. *See Minnesota Energy & Economic Dev. Authority v. Printy*, 351 N.W.2d 319, 351–52 (Minn.1984). More importantly, the decisions made by the board and Commissioner in this case are quasi-judicial, and not legislative. Criteria of general application are not formulated and only the status of a single patient is determined. The board makes a recommendation to the Commissioner, who makes the ultimate decision.

Second, the statutory scheme adequately protects the due process rights of patients who petition for discharge. If the special review board issued a recommendation without findings or a record, so the basis of its decision was not ascertainable, the process could deprive patients of due process. *See Hunter v. Zenith Dredge Co.*, 220 Minn. 318, 19 N.W.2d 795 (1945). In fact, the board's hearings are open to counsel, and numerous witnesses attended the hear-

ing on Reome's petition. The board issued four pages of findings and memorandum explaining the basis for its recommendation that Reome not be discharged.

Additional protection is afforded the patient by the right of appeal from the Commissioner's decision to the three-judge supreme court appeal panel for consideration *de novo*. Minn.Stat. § 253B.19, subd. 2. Testimony and evidence are then received on the record and the decision may be further appealed to this court. *Id.*, subd. 5.

The United States Supreme Court has considered the due process implications of the discharge process for dangerous committed persons. *See Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). The Minnesota Supreme Court, applying *Jones*, has already concluded the Minnesota statutory discharge process "reflect[s] the constitutional standard." *Enebak v. Noot*, 353 N.W.2d 544, 547 (Minn.1984).[1]

### III.

■ Reome also argues the discharge criteria are unconstitutional as applied. He does not dispute the findings made by the appeal panel, but argues he must be released since his dangerousness does not result from mental illness. That issue has already been decided by the supreme court in *Enebak*. Reome continues to rely upon *Johnson v. Noot*, 323 N.W.2d 724 (Minn. 1982), urging this court to consider the definition of a mentally ill and dangerous person in conjunction with the discharge criteria, even though the supreme court explicitly rejected that analysis in *Enebak* and remanded for reconsideration our decision in *Reome I* which adopted the *Johnson* analysis. *Enebak v. Noot*, 353 N.W.2d 544 (Minn.1984), *Reome v. Levine*, 361 N.W.2d 29 (Minn.1985).

1. *Enebak* involved the provisional discharge request of a psychopathic personality. Persons committed as psychopathic personalities are subject to the same statutory provisions as those committed as mentally ill and dangerous. Minn.Stat. § 253B.02, subd. 17 (1984). Al-

though the factors to be considered before provisional discharge differ slightly, the decision process on a provisional discharge provision is identical to that of a petition for full discharge. *See* § 253B.18, subds. 7 and 15.

It is clear that Reome is dangerous to the public. The existence of dangerousness is the essential element justifying confinement and denial of Reome's petition for discharge. *See O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975); *Enebak,* 353 N.W.2d at 547. "The determining question should be: If not institutionalized, will they be a danger to society?" *Lausche v. Commissioner of Public Welfare,* 302 Minn. 65, 69, 225 N.W.2d 366, 368 (1974).

## DECISION

Minn.Stat. § 253B.18, subd. 15 is not unconstitutional.

Affirmed.

NIERENGARTEN, J., dissents.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent from the majority's conclusion that permitting the State to confine, in a hospital for the mentally ill, an individual who is not mentally ill, is constitutional. Because the discharge criteria appear to authorize continued confinement of a patient who remains dangerous to the public, even though capable of adjusting to open society and no longer in need of inpatient treatment and supervision, I conclude Minn.Stat. § 253B.18, subd. 15 is unconstitutional.

No one has challenged the findings of the appeal panel, which concluded Reome is not mentally ill, he is capable of making an acceptable adjustment to open society, he will likely engage in criminal behavior, and he does not require inpatient treatment and supervision. *See* Minn.Stat. § 253B.18, subd. 15 (1984). All parties apparently concede Reome could not currently be committed, since he is not mentally ill. *See* Minn. Stat. § 253B.02, subds. 13 and 17.

Psychiatrist Brian Gottlieb is the medical director of the security hospital. He told the appeal panel in January 1984 that Reome was not mentally ill, even when originally committed in November 1982 as a mentally ill and dangerous person. However, we need not review Reome's original commitment. It is not enough that his "original confinement was founded upon a constitutionally adequate basis, if in fact it was, because even if his involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed." *O'Connor v. Donaldson,* 422 U.S. 563, 574–75, 95 S.Ct. 2486, 2492–93, 45 L.Ed.2d 396 (1975).

Due process requires consideration of the private interest at stake and the governmental interest. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The committed person has an "unquestioned constitutional right not to be confined without due process of law." *O'Connor v. Donaldson,* 422 U.S. at 587–88, 95 S.Ct. at 2500 (Burger, C.J., concurring). As our supreme court has acknowledged, the governmental interest "is not punitive, but rather is related to the patient's continuing illness and dangerousness. Once the patient no longer requires treatment or is no longer dangerous to society, due process demands his release." *Enebak v. Noot,* 353 N.W.2d 544, 547 (Minn.1984).

Unlike *Enebak,* Reome is no longer in need of inpatient treatment and supervision. The majority does not address the inherent violation of Reome's right as a patient "to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary." Minn.Stat. § 253B.03, subd. 7. The legislature has determined that every committed person has a right to treatment, which further emphasizes the fact that the governmental purpose behind commitment is treatment directed to the eventual discharge of the patient. Reome is not mentally ill and cannot be treated. The record indicates the only effective change in his dangerous behavior and antisocial personality will occur as a result of the normal aging process.

Due process entitles the patient "to release when he has recovered his sanity *or* is no longer dangerous." *Jones v. United States,* 463 U.S. 354, 368, 103 S.Ct. 3043,

3051, 77 L.Ed.2d 694 (1983) (emphasis added). Any interpretation of the discharge criteria which requires a patient to show the absence of *both* mental illness and dangerousness clearly violates due process.

Additionally, the criteria appear to violate constitutional guarantees of Equal Protection. If another person had been sentenced for behavior identical to that which formed the basis of the committing court's finding that Reome was dangerous, that person would have been released at the completion of a definite prison term, regardless of the likelihood of repeat offenses. By contrast, Reome will be deprived of his liberty indefinitely, until he can demonstrate he is no longer dangerous. In the meantime, Reome is confined to a hospital for the mentally ill, even though he is not mentally ill.

The criminal corrections system is designed to protect the public and the commitment system is designed to treat patients. Detention of a dangerous person, such as Reome, who is not mentally ill should be left to the corrections system.