308 N.W.2d 495 (1981)
In the Matter of the Mental Illness of K. B. C., Patient.
K. B. C., Appellant,
v.
COUNTY OF ITASCA, Respondent, and
Arthur E. Noot, Commissioner of the Minnesota Department of Public Welfare, Respondent,
In Re D. L., Psychopathic Personality.
In Re the Mental Illness of M. W.
M. W., petitioner, Appellant,
v.
COUNTY OF BROWN, Respondent, and
Arthur E. Noot, Commissioner of Public Welfare, Respondent.
Nos. 51729, 51730 and 52084.
Supreme Court of Minnesota.
July 24, 1981.
*496 Charles H. Thomas, Southern Minn. Regional Legal Services, Inc., Mankato, for appellants.
Sonya C. Steven, County Atty., and John P. Dimich, Asst. County Atty., Grand Rapids, for County of Itasca.
Warren Spannaus, Atty. Gen., and John L. Kirwin, Sp. Asst. Atty. Gen., St. Paul, for Noot, Commr. of Mn. Dept. of Public Welfare.
Robert W. Johnson, County Atty., and James J. Weber, Jr., Asst. County Atty., Anoka, for County of Anoka.
R. T. Rodenberg, County Atty., New Ulm, for County of Brown.
Thomas L. Johnson, Hennepin County Atty., Peter J. Fransway, Asst. County Atty., Anne E. Peek, Staff Atty., Minneapolis, for amicus curiae.
Heard, considered, and decided by the court en banc.
YETKA, Justice.
D. L. was committed to a state hospital as a psychopathic personality in 1979. In 1980, he petitioned the Anoka County Probate Court for a change of commitment status under Minn.Stat. § 253A.19 (1980), alleging that he no longer had a psychopathic personality. The probate court dismissed his petition on the ground that he was really seeking a discharge and Minn.Stat. § 253A.15 (1980) provided the exclusive remedy for discharge of someone with a psychopathic personality. A three-judge district court panel affirmed, and petitioner brought this appeal. We affirm.
K. C. was committed to a state hospital as mentally ill and dangerous in 1974. At one time he had been provisionally discharged, but the provisional discharge was revoked. In 1980, he petitioned the Itasca County Probate Court for a change of commitment status under section 253A.19, alleging that he was no longer mentally ill and dangerous. The probate court dismissed his petition because he was not an "interested person" under the statute who had standing to pursue the remedy. A three-judge district *497 court panel affirmed, and petitioner brought this appeal. Petitioner has also instituted proceedings for discharge under section 253A.15, and those proceedings were still pending at the time this appeal was brought. We affirm but on different grounds.
M. W. was committed to a state hospital as mentally ill and dangerous in 1974. In 1980, he petitioned the Brown County Probate Court for a change of commitment status under section 253A.19, alleging that he was no longer dangerous although still mentally ill. The probate court dismissed his petition, and a three-judge district court panel affirmed, finding that section 253A.15 provided his exclusive remedy. Petitioner brought this appeal. While these proceedings were pending, petitioner sought a provisional discharge under section 253A.15. That provisional discharge was granted. We affirm.
The issues raised on this appeal are:
1. Must patients who have been committed as mentally ill and dangerous, or as psychopathic personalities, pursue remedies of discharge and change of commitment status exclusively under Minn.Stat. § 253A.15 (1980)?
2. Do the remedies and procedures available to patients under Minn.Stat. § 253A.15 (1980) satisfy constitutional requirements?
1. All three petitioners sought to change their commitment status in the probate court under section 253A.19. The relevant portion of that statute provides:

Any interested person may petition the court of commitment or the court to which venue has been transferred for an order adjudicating that a patient is not now in need of continued hospitalization or for an order adjudicating that an individual is not now mentally ill, mentally deficient, or inebriate, or for an order restoring a patient to legal capacity, or for such other order as the court may deem just and equitable.

Minn.Stat. § 253A.19(1) (1980) (emphasis added).
Section 253A.15, however, governs the discharge of patients who have psychopathic personalities or who are mentally ill and dangerous:
Where such patient was found by the committing court to be dangerous to the public or to have a psychopathic personality, such patient shall not be discharged or provisionally discharged except upon order of the commissioner and no such discharge or provisional discharge shall be ordered by the commissioner unless he is satisfied that the patient is capable of making an acceptable adjustment in society and unless the commissioner has received a favorable recommendation to that effect by a majority of the special review board appointed and acting under section 253A.16. A petition for an order of discharge or provisional discharge shall be filed with the commissioner and may be filed by the patient or by the head of the hospital.
Id. § 253A.15(2)(a) (emphasis added). Other portions of this statute provide for appeals to a three-judge panel of probate court judges and to the supreme court. The statute clearly states, however, that psychopathic personalities or mentally ill and dangerous patients shall not be discharged, whether provisionally or otherwise, except through this administrative procedure.
The probate court dismissed D. L.'s petition under section 253A.19 because he was really seeking a discharge, and a discharge had to be pursued before the commissioner under section 253A.15. The three-judge district court panel affirmed, finding that there was a conflict between these two sections, and because section 253A.15 was more specific, it prevailed over the more general section 253A.19. See Minn.Stat. § 645.26(1) (1980).
D. L. does not dispute the finding that he was really seeking a discharge. Instead, he argues that section 253A.19 provides a remedy that is available to him in addition to the procedure set forth in section 253A.15. The language of section 253A.15, however, is specific  a psychopathic personality shall not be discharged except *498 upon the commissioner's order. The purpose of this administrative remedy is to provide extra protection for society from those who have been found to be dangerous. We recognized this interest in Lausche v. Commissioner of Public Welfare, 302 Minn. 65, 225 N.W.2d 366 (1974), cert. denied, 420 U.S. 993, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975), stating: "If the patient is judged mentally ill and dangerous, the rights of the public must be considered. . . . The determining question should be: If not institutionalized, will they be a danger to society?" Id. at 69, 225 N.W.2d at 368. Accordingly, the district court's interpretation of the two statutes was correct, and D. L.'s petition was properly dismissed.
K. C.'s section 253A.19 petition was dismissed by the probate court for a different reason. Only an "interested person" can petition for relief under that statute, and the court found that he was not such a person. See Minn.Stat. § 253A.02(14) (1980).
We need not decide whether petitioner is an interested person with standing to pursue a remedy under section 253A.19, however, because K. C.'s petition is really one for discharge, and therefore it is similar to D. L.'s petition. Because section 253A.15 provides the exclusive remedy for discharge of a mentally ill and dangerous patient, K. C. cannot pursue a discharge under section 253A.19, and his petition was properly dismissed by the probate court.
M. W. has already received a provisional discharge under section 253A.15; he still seeks a change of status from "mentally ill and dangerous" to "mentally ill" only under section 253A.19. The Hospitalization and Commitment Act does not, however, specifically empower either the probate court or the commissioner to grant this relief. The probate court dismissed M. W.'s petition without giving any specific reason for the dismissal. The three-judge district court panel affirmed, stating that section 253A.15 was the only source of remedy for someone committed as mentally ill and dangerous.
Appellant M. W. does not specify why the relief he seeks is important other than to state the "mentally ill" label carries with it less social stigma than the "mentally ill and dangerous" label.
The commissioner argues that if M. W. was given the relief he seeks, a complete discharge would be easier for him to acquire in the future. A patient who is "mentally ill" may be discharged by the head of a state hospital or by the probate court. See id. §§ 253A.15(1), .19(1), (5). We do not find that this would be the result if petitioner's classification was changed.
Obtaining a complete discharge in the future would still require M. W. to go through the same procedure as he did for his provisional discharge. Section 253A.15(2) provides that only the commissioner may discharge a patient "[w]here such patient was found by the committing court to be dangerous to the public." If M. W. would be reclassified as mentally ill, the fact remains that the committing court originally found him to be mentally ill and dangerous. As a result, section 253A.15(2) gives the commissioner the sole and exclusive authority to discharge M. W. even if he is reclassified as mentally ill only.
Section 253A.15(2) does not specifically authorize the commissioner to change a patient's classification. Section 253A.19(1), on the other hand, does permit the probate court to decide that a patient is no longer mentally ill, inebriate, or mentally deficient and to enter any other order that is just and equitable. While an argument can be made that section 253A.19, with its broad language, should also authorize a probate court to remove the "dangerous" label, we believe that section, when read in conjunction with section 253A.15, does not compel such a result. A careful reading of these statutes reveals that section 253A.19 was never intended to apply to psychopathic personalities or mentally ill and dangerous patients. The legislature intended to provide special protection to the public from these types of patients and gave the special review board and the commissioner's office and staff a special supervisory role. If psychopathic personalities or mentally ill *499 and dangerous patients were allowed to use the section 253A.19 procedure, some of the benefit from this supervisory role would be lost. Moreover, the fact that dangerous patients and psychopathic personalities are specifically mentioned in section 253A.15, yet not mentioned in section 253A.19, shows a legislative intention that the latter section not provide relief to these patients.
We do accept the argument, however, that a patient should be able to have the "dangerous" label removed if circumstances warrant. Section 253A.15 specifically authorizes the patient or the head of a state hospital to file a petition for discharge or provisional discharge. Such a petition carries with it, either expressly or by implication, a claim that the patient is no longer dangerous to the public. The statute also requires that the patient be capable of making an acceptable adjustment to society before being released. We do not accept the commissioner's argument that section 253A.15 does not include the authority to find a patient no longer dangerous. We think it is entirely permissible for a patient to be found no longer dangerous, but at the same time for the patient to be found still mentally ill and not capable of making an acceptable adjustment to society. Because the commissioner has most of the information on a patient's hospital life and the special expertise available to him from the review board, requiring a patient to apply under section 253A.19 for a change of status, but yet requiring him to apply for discharge under section 253A.15(2), would result in a needless and inefficient duplication of effort.
We therefore hold that psychopathic personalities and patients found to be dangerous to the public may, after commitment, petition the commissioner under section 253A.15(2) for discharge or provisional discharge and that such a petition also may contain a request for a finding that the patient is no longer dangerous to the public. While the commissioner, the special review board, and the appeal panel may all agree with a finding that the patient is no longer dangerous to the public, the discharge could still be denied for the reasons set forth in the statute.
2. Appellants also object to the constitutionality of being limited to the remedies available through section 253A.15. They refer to a long line of Minnesota cases that has made "restoration to capacity" a remedy available from the probate courts. See, e. g., State ex rel. Anderson v. United States Veterans Hospital, 268 Minn. 213, 128 N.W.2d 710 (1964); State ex rel. Preis v. District Court, 186 Minn. 432, 243 N.W. 434 (1932). Because restoration to capacity has constitutional origins, they claim a constitutional right to pursue change of commitment status under section 253A.19.
Referring to probate court jurisdiction, Minnesota's constitution provides that "[o]riginal jurisdiction in law and equity for... all guardianship and incompetency proceedings... shall be provided by law." Minn.Const. Art. VI, § 11. None of the appellants in these proceedings is under guardianship, nor have they been adjudicated incompetent. Cf. Minn.Stat. § 253A.18(1) (1980) (commitment not a judicial determination of incompetency). Thus, their claims do not come within the original constitutional jurisdiction of the probate court.
When the "restoration to capacity" cases were decided many years ago, the law in Minnesota equated commitment for mental illness with legal incompetence and guardianship. This is not true of the present law. See id. (commitment not a determination of incompetency); cf. id. § 525.61 (anyone under guardianship may petition for restoration of capacity). Because appellants' capacity has not been impaired, they have no standing to seek to have their capacity restored.
Finally, the discharge remedies under section 253A.15 provide a full panoply of due process rights, including the right to counsel and the right to appeal to a three-judge panel of the probate court. See id. § 253A.15(2)(b)-(d). Any party aggrieved by the commissioner's decision pertaining to discharge is entitled to a rehearing before the probate court panel. Thus, all of the *500 appellants have a statutory right to pursue their discharge remedies before the probate court under section 253A.15, the only prerequisite being that they must first exhaust their administrative remedies before the commissioner. This satisfies completely any constitutional objections that have been raised. The decisions of the trial courts are affirmed in all three cases.