**Bruce J. LIDBERG, Appellant,**

v.

**Natalie Haas STEFFEN, Commissioner of Human Services, Respondent.**

No. C1–92–1129.

Court of Appeals of Minnesota.

Nov. 24, 1992.

Review Granted Jan. 15, 1993.

Thomas Bennett Wilson, III, Gayle Gaumer, Edina, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kathy Meade Hebert, Sp. Asst. Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Margaret Daly, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and PARKER and PETERSON, JJ.

## OPINION

PETERSON, Judge.

Appellant, Bruce J. Lidberg, was committed in 1977 as a person mentally ill and dangerous to the public pursuant to the commitment statute in effect at that time. Minn.Stat. § 253A.07, subd. 17(a), (c) (1976). A new commitment statute was enacted in 1982. 1982 Minn.Laws ch. 581, *codified at* Minn.Stat. §§ 253B.01–.23 (1982). It applies to any conduct, transaction, or proceeding within its terms that occurred after August 1, 1982. 1982 Minn. Laws ch. 581, § 26, *amended by* 1983 Minn.Laws ch. 251, § 27 & 1984 Minn.Laws ch. 623, § 10.

In 1985, appellant's commitment status was amended to mentally ill person following a determination that he was no longer dangerous to the public. In 1992, appellant's petition for full discharge was denied by the Commissioner of Human Services and appellant sought review by the judicial appeal panel. The judicial appeal panel denied full discharge, granted provisional discharge, and rejected appellant's constitutional challenge. We reverse on constitutional grounds.

## FACTS

Appellant suffers from chronic paranoid schizophrenia. In the incident that led to his commitment, he entered a medical clinic with a gun and a box of shells and threatened employees. He was initially committed as a person mentally ill and dangerous to the public on August 18, 1977. His commitment was made indeterminate on October 17, 1977.

In May 1979, after receiving a favorable recommendation from a special review board, the Commissioner of Human Services granted appellant a transfer to the Anoka–Metro Regional Treatment Center, an "open" hospital. On August 3, 1981, he was provisionally discharged from Anoka to a board and care facility, again after obtaining a favorable recommendation from the special review board. After approximately a year at the board and care facility, he moved into an apartment where he lived alone. Within two months, his mental condition deteriorated; he became so psychotic he could not provide for his personal needs or take care of his apartment. He agreed to return to Anoka in September 1982 and his provisional discharge was later revoked.

In 1985, appellant requested a hearing before a special review board for a provisional discharge and a finding he was no longer dangerous. The Commissioner granted his provisional discharge to a Rule 36 facility, but deferred the issue regarding dangerousness for six months.

Six months later, on November 8, 1985, following another hearing and favorable recommendation by the special review board, the Commissioner issued an order finding appellant no longer dangerous within the meaning of Minn.Stat. § 253B.02, subd. 17 (1984) and amending his commitment status from mentally ill and dangerous to the public to mentally ill only. However, the amended commitment status was qualified as follows:

> The removal of the dangerous label does not alter the circumstances of the original commitment as mentally ill and dangerous. Mr. Lidberg continues to be under the jurisdiction of the Commissioner of Human Services and that upon any contemplated change in Bruce Lidberg's status such as discharge from his commitment or change in his provisional discharge this Department shall be notified and a Special Review Board hearing shall be scheduled as appropriate.

In December 1985, appellant insisted that he be allowed to return to inpatient status at Anoka. Appellant has remained at Anoka since then, refusing to participate in any discharge planning. The staff has supported provisional discharge to a less restrictive, but supervised, living environment such as a Rule 36 facility.

In 1987, appellant attempted to obtain discharge by petitioning the committing court for a declaratory judgment that Minn.Stat. § 253B.18, subd. 3 (1986), requiring indeterminate commitment for persons found to be mentally ill and dangerous to the public, was unconstitutional on equal protection grounds. The committing court dismissed his petition and appellant did not appeal.

Appellant petitioned the United States District Court for a writ of habeas corpus, alleging his continued commitment as mentally ill and dangerous was unconstitutional. On May 6, 1991, the court dismissed his petition for failure to exhaust his state remedies, including pursuing discharge through statutorily prescribed administrative and judicial processes.

Appellant then petitioned the Commissioner for a full discharge from his commitment as a person mentally ill and dangerous to the public. The Commissioner denied appellant's petition for discharge and appellant petitioned the judicial appeal panel for rehearing and reconsideration. The appeal panel conducted a full evidentiary hearing on March 6, 1992. It upheld the constitutionality of the discharge statute and denied the petition for full discharge. It granted him a provisional discharge to a Rule 36 facility if he desired it. Lidberg appeals.

## ISSUE

When a person who was originally committed as mentally ill and dangerous to the public is found to be mentally ill, but no longer dangerous to the public, does due process permit the continued use of commitment procedures applicable to a person mentally ill and dangerous to the public?

## ANALYSIS

Appellant argues that his substantive due process rights were violated because the discharge standards applicable to those who are mentally ill and dangerous to the public were applied to him even though there has been a determination that he is no longer dangerous to the public. He contends that because the "dangerous" label was removed, the statutory provisions relating to one committed as mentally ill should apply to him. *See* Minn.Stat. § 253B.16, subd. 1 (1990) (head of treatment facility to discharge mentally ill persons when no longer in need of institutional care and treatment or at conclusion of commitment period).

To understand appellant's claim it is necessary to understand the difference between the commitment procedures applicable to a mentally ill person and those appli-

cable to a person mentally ill and dangerous to the public.

The initial commitment for a person committed as "mentally ill" shall not exceed six months. Minn.Stat. § 253B.09, subd. 5 (1990). If the committing court determines by clear and convincing evidence that there is a need for continued involuntary commitment, commitment may continue for up to twelve months beyond the initial commitment. Minn.Stat. §§ 253B.13, subd. 1, 253B.12, subd. 4 (1990). Conversely, if the criteria for continued commitment have not been satisfied, the person must be discharged. Commitment may be extended for additional periods of up to twelve months each only if a new petition for commitment is filed and the court determines by clear and convincing evidence there is a need to continue involuntary commitment. Minn.Stat. §§ 253B.13, subd. 1, 253.12, subd. 4. If no petition is filed, the person must be discharged.

In addition, a mentally ill person may be discharged from a treatment facility if the head of the facility certifies that the person is no longer in need of institutional care and treatment. Minn.Stat. § 253B.16, subd. 1. A mentally ill person may also petition the court for an order that the person is no longer mentally ill. Minn.Stat. § 253B.17, subd. 1 (1990).

If a court finds by clear and convincing evidence that a proposed patient is a "person mentally ill and dangerous to the public," the person may be committed for an initial period and a review hearing must be held within ninety days. Minn.Stat. § 253B.18, subds. 1–2 (1990). If the court finds at the review hearing that the person continues to be mentally ill and dangerous to the public, the person is committed for an indeterminate period. Minn.Stat. § 253B.18, subd. 3. The person shall not be discharged unless the Commissioner of Human Services finds that the person is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision. Minn.Stat. § 253B.18, subd. 15.

■ The person committed or the county attorney of the county from which the person was committed may petition an appeal panel of three judges for a rehearing or reconsideration of a decision of the Commissioner of Human Services. Minn.Stat. § 253B.19, subds. 1–2 (1990). A person committed as mentally ill and dangerous to the public who seeks discharge in a hearing before the judicial appeal panel has the burden of demonstrating by a preponderance of the evidence that the statutory criteria in Minn.Stat. § 253B.18, subd. 15 have been met. *Drewes v. Levine*, 352 N.W.2d 456, 458 (Minn.App.1984).

Here, the judicial appeal panel denied appellant full discharge. The panel found that, although appellant met his burden of demonstrating he is no longer dangerous to the public, he continues to be mentally ill and in need of treatment and supervision that would not be available in a placement less restrictive than a Rule 36 facility. The panel also found that, while not a danger to others, appellant would be a danger to himself if not supervised.

Thus, although he demonstrated he is no longer dangerous to the public, appellant remains involuntarily committed for an indeterminate period because he was unable to demonstrate he is no longer in need of treatment and supervision. This is so even though a mentally ill person may be committed for an indeterminate period only if the person is also found to be dangerous to the public.

■ Civil commitment for any purpose is a significant deprivation of liberty requiring due process protection. *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). The appeal panel and respondent rely upon *In re K.B.C.*, 308 N.W.2d 495 (Minn.1981) to continue appellant's indeterminate commitment. There, the supreme court recognized that under chapter 253A a person committed as mentally ill and dangerous to the public may be found to be no longer dangerous and the "dangerous" label may be removed. *Id.* at 499. However, the court noted that such a finding would not change the fact that the patient was com-

mitted as mentally ill and dangerous to the public, and statutory discharge procedures for persons committed as mentally ill and dangerous to the public would remain applicable. *Id.* at 498.

After *In re K.B.C.* and the judicial appeal panel decision in this matter, the United States Supreme Court ruled that due process does not allow the involuntary confinement of a defendant in a criminal case who is found not guilty by reason of insanity to be continued until the acquitted defendant, who was no longer mentally ill, is able to demonstrate he is not dangerous to himself and others. *Foucha v. Louisiana,* — U.S. ——, ——–——, 112 S.Ct. 1780, 1786–87, 118 L.Ed.2d 437 (1992).

In *Foucha,* a criminal defendant was found not guilty by reason of insanity and committed to a psychiatric hospital. He later recovered from his mental illness. However, because of his antisocial personality, the court appointed doctors who examined him could not certify that he would not be a danger to himself or to other people. Although he was no longer mentally ill, his confinement was continued because he could not demonstrate he was not dangerous. *Id.* at ——, 112 S.Ct. at 1782–83.

The United States Supreme Court held that because the mental illness that was the initial basis for holding Foucha no longer existed, the state was no longer entitled to hold him on that basis. *Id.* at ——, 112 S.Ct. at 1784.

The Court stated:

Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed.

*Id.* at ——, 112 S.Ct. at 1785.

■ Here, the state seeks to continue appellant's indeterminate commitment as a person mentally ill and dangerous to the public even though appellant is no longer dangerous to the public. Because the state has determined appellant is no longer dangerous to the public, it may not continue to hold him as if he were. *See id.* at ——, 112 S.Ct. at 1785.

Our decision does not mean appellant must be granted a full discharge from commitment. The judicial appeal panel found that appellant is currently mentally ill and a danger to himself. Appellant's current condition may provide a basis for commitment as a mentally ill person under Minn. Stat. § 253B.09. However, because appellant can no longer be held as a person mentally ill and dangerous to the public he is entitled to constitutionally adequate procedures to establish the grounds for his continued commitment. *See Foucha,* — U.S. at ——, 112 S.Ct. at 1785.

In *Foucha,* the court recognized that a state may confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous. *Id.* at ——, 112 S.Ct. at 1786. However, the state statute challenged in *Foucha* did not require such a showing by the state. The court found the statute unconstitutional as applied because:

> Under the state statute, Foucha is not now entitled to an adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community. Indeed, the State need prove nothing to justify continued detention, for the statute places the burden on the detainee to prove that he is not dangerous.

*Id.* at ——, 112 S.Ct. at 1786.

The same is true for appellant. Because he was originally committed as a person mentally ill and dangerous to the public and sought a full discharge under Minn. Stat. § 253B.18, subd. 15, he was forced to bear the burden of proving he is no longer in need of treatment and supervision even though he demonstrated that he is no longer dangerous to the public. The state was not required to prove anything to permit continued commitment.

If appellant were committed as a mentally ill person, he would be entitled to an adversary hearing at which the state must prove by clear and convincing evidence that he should remain committed. Minn.Stat. §§ 253B.13, subd. 1, 253B.12, subd. 4. The due process protection required under *Foucha* entitles appellant to such a hearing.

We note that, at a hearing to continue appellant's commitment as mentally ill, the state is not required to prove by clear and convincing evidence that appellant is dangerous to the public as defined in Minn. Stat. § 253B.02, subd. 17(b). Although the state may confine a mentally ill person only if it shows by clear and convincing evidence that the individual is mentally ill and dangerous, the commitment act uses the concept of danger in two different ways.

Under the commitment act, a person who "poses a substantial likelihood of physical harm to self or others" can be committed as a mentally ill person. Minn.Stat. § 253B.02, subd. 13(b) (1990). To be committed as a person mentally ill and dangerous to the public, however, it must be shown that a person "presents a clear danger to the safety of others." Minn.Stat. § 253B.02, subd. 17. In both cases, the person poses some danger, but the degrees of danger differ. To continue appellant's commitment as mentally ill, it is only necessary for the state to show that he poses the lesser degree of danger.

If the state makes this showing, appellant will remain committed as a mentally ill person and the state will bear the burden of periodically demonstrating the need to continue his confinement under Minn.Stat. § 253B.13, subd. 1.

Because appellant is no longer dangerous to the public, we are not presented with the issue whether the Equal Protection Clause of the United States Constitution permits those who are mentally ill and dangerous to the public to be treated differently under the commitment act than those who are mentally ill only.

## DECISION

The order of the appeal panel is reversed. Minn.Stat. § 253B.18, subd. 15, as applied to appellant, denies the due process protection required under *Foucha*. Before his commitment may be continued, appellant is entitled to a hearing and determination under Minn.Stat. § 253B.13, subd. 1. A petition may be filed under Minn.Stat. § 253B.13, subd. 1 before judgment is entered pursuant to this decision.

Reversed.