Bruce J. LIDBERG, Respondent,

v.

Natalie Haas STEFFEN, Commissioner of Human Services, Petitioner, Appellant.

No. C1–92–1129.

Supreme Court of Minnesota.

April 1, 1994.

Hubert H. Humphrey, III, Atty. Gen., Beverly J. Heydinger, Asst. Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Thomas S. Arneson, Asst. County Atty., Minneapolis, for appellant.

Thomas Bennett Wilson, III, Gayle Gaumer, Wilson Law Firm, Edina, for respondent.

Paul M. Landskroener, Asst. Atty. Gen., St. Paul, for amicus State of MN.

Patricia M. Siebert, Legal Aid Society of Mpls., Minneapolis, for amicus MN Mental Health Law Project of the Legal Aid Society.

## OPINION

PAGE, Justice.

Respondent brought a petition before the supreme court appeal panel seeking full discharge from his commitment as mentally ill and dangerous (MI & D). Minn.Stat.

781

§ 253B.18, subd. 15 (1992).[1]  The appeal panel denied respondent's petition, but granted him a provisional discharge to a Rule 36 structured living facility, if he so desired. Respondent did not enter the Rule 36 facility.  Instead, he appealed the denial of his full discharge to the court of appeals.  The court of appeals held that the statutory procedures for discharge from commitment as MI & D denied respondent due process, and granted respondent a complete discharge from his commitment as MI & D.  *Lidberg v. Steffen,* 492 N.W.2d 560 (Minn.App.1992).  We reverse.

Respondent is a 43–year–old male who suffers from chronic paranoid schizophrenia. He was originally committed as MI & D to the Minnesota Security Hospital on August 18, 1977, after an incident at the Mound Medical Clinic.  In that incident, respondent entered the clinic with a rifle and a box of ammunition and threatened to "blow off the heads" of clinic employees who had not responded to his requests for information in a satisfactory manner.  Respondent's commitment as MI & D was made indeterminate on October 17, 1977.

In May 1979, respondent was transferred from the Minnesota Security Hospital to the Anoka Metro Regional Treatment Center (AMRTC).  In August 1981, he was provisionally discharged to a board and care facility.  In July 1982, without prior approval, respondent left the board and care facility to live on his own in an apartment.  While living on his own in the apartment respondent resumed using alcohol and marijuana. By September of that year his condition deteriorated to the point that he returned to AMRTC on his own.  As a result, his provisional discharge was revoked.  In April of

1985, respondent was again provisionally discharged to a Rule 36 facility.  By order dated November 8, 1985, the Commissioner of Human Services changed respondent's commitment status from MI & D to mentally ill (MI), pursuant to Minn.Stat. § 253B.  In changing respondent's commitment status to MI, the Commissioner stated that the change would not affect the provisions governing his discharge, and that he would still have to meet the requirements of the MI & D discharge statute.  *See In re K.B.C.,* 308 N.W.2d 495, 498–99 (Minn.1981) (stating that reduction of status from MI & D to MI did not remove MI & D status for purpose of seeking discharge).

In December 1985, while still provisionally discharged to the Rule 36 facility, respondent began to believe that another patient was out to get him.  He again insisted that he be returned to AMRTC.  After respondent returned to AMRTC, his provisional discharge was revoked, and his status returned to MI & D.

In 1987, respondent petitioned the Hennepin County District Court for a declaratory judgment that Minn.Stat. § 253B.18, subd. 3 (1992), denied him equal protection under the Fourteenth Amendment to the U.S. Constitution.  He argued that because he was required to undergo the MI & D procedures for discharge, even though his status at one time had been changed to MI, he was being treated differently than patients committed only as MI.  This petition was denied by the district court, which ruled that the statute was constitutional because respondent's history of dangerousness justified treating him differently than patients committed as MI. The court stated that:

1.  Section 253B.18, subdivision 15, provides:

A person who has been found by the committing court to be mentally ill and dangerous to the public shall not be discharged unless it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the special review board, that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision.

In determining whether a discharge shall be recommended, the special review board and

commissioner shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community.  If the desired conditions do not exist, the discharge shall not be granted.

Under a previous version of this statute, the phrase "capable of making an acceptable adjustment in society," was construed as meaning "that the patient is either no longer mentally ill or no longer dangerous."  *Johnson v. Noot,* 323 N.W.2d 724, 728 (Minn.1982).

The Commissioner's finding that Respondent is not *presently* dangerous does not alter his classification as MI & D for the purpose of determining his rights and remedies under the commitment act. *In re K.B.C.*, 308 N.W.2d 495, 498 (Minn.1981). An individual found mentally ill and dangerous represents a substantially greater threat to the public than does someone who is simply mentally ill. It is therefore reasonable for the legislature to impose different requirements on such persons. *Lidberg v. Gardebring*, File No. 68447 (Henn.Cty.Dist.Ct., May 18, 1987).

Respondent did not appeal the rejection of his declaratory judgment action, but instead he petitioned for habeas corpus relief from the federal courts. The United States District Court denied his petition because respondent failed to exhaust his state remedies before bringing his habeas petition. *Lidberg v. Wynia*, No. 3–90–375 (D. Minn. filed May 6, 1991).

In October 1991, respondent petitioned the Commissioner of Human Services under Minn.Stat. § 253B.18, subd. 15, for a full discharge from his commitment. That petition was denied. Respondent next petitioned the supreme court appeal panel for reconsideration of the Commissioner's order denying his petition for full discharge. In the alternative, respondent requested that the appeal panel grant him a provisional discharge into an apartment of his own. At the hearing before the appeal panel, however, respondent's psychological expert opposed granting respondent a full discharge and recommended instead that he be provisionally discharged to an independent living situation with ongoing treatment and supervision.

The supreme court appeal panel found that respondent continued to be mentally ill; that while he did not need to be institutionalized, he continued to need treatment and supervision, which would not be available to him if he lived on his own; and that he would be a danger to himself if not supervised. The appeal panel upheld the Commissioner's order denying respondent a full discharge, and

further denied his request for a provisional discharge to his own apartment. The appeal panel granted respondent a provisional discharge to a Rule 36 structured living facility. Respondent has refused to accept that provisional discharge.[2] The appeal panel upheld the constitutionality of Minn.Stat. § 253B.18, subd. 15, on its face and as applied to respondent.

Respondent next appealed the denial of his full discharge to the court of appeals, arguing that by applying the discharge provisions of Minn.Stat. § 253B.18, subd. 15, to him, he was denied substantive due process and equal protection. The court of appeals ruled that requiring respondent to utilize the discharge procedures under Minn.Stat. § 253B.18, subd. 15, violated his right to due process. *Lidberg v. Steffen*, 492 N.W.2d 560 (Minn.App.1992). Because the court disposed of the case on due process grounds, it did not reach the issue of whether respondent's right to equal protection was violated by the application of the statute.

Hennepin County brings this appeal, arguing that the court of appeals erred in its determination that the discharge provisions of Minn.Stat. § 253B.18, subd. 15, violate respondent's right to due process because respondent meets all of the requirements for continued commitment under substantive due process in that he is mentally ill, is in need of treatment and supervision, and is a danger to himself. *See Foucha v. Louisiana*, —— U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). The County also argues that application of Minn.Stat. § 253B.18, subd. 15, to respondent comports with equal protection because he is being treated the same as similarly situated people. The County opposes a full discharge for respondent because it does not believe that in his current condition he is capable of making an acceptable adjustment to open society. The County does not oppose a provisional discharge to a Rule 36 structured living facility.

Respondent, in turn, argues that he is no longer dangerous to others, and therefore his right to due process is violated when the

---

**2.** Throughout his commitment the state has attempted to place respondent in the least restrictive living environment consistent with respondent's mental condition and its obligation for public protection. For the most part, respondent has not taken advantage of these opportunities.

state requires him to meet the provisions of Minn.Stat. § 253B.18, subd. 15, for discharge. He also contends that he should be permitted to utilize the same discharge provisions as individuals committed as MI because he is no longer dangerous and that denying him discharge under the MI discharge procedures violates his right to equal protection.

■■■ A state may deprive a person who is mentally ill and dangerous of his or her liberty by confinement to a mental institution without violating due process until such time as that person is no longer mentally ill or is no longer a danger to himself. *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *Jones v. United States,* 463 U.S. 354, 370, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983). Due process requires "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). Respondent was originally committed as MI & D, and the record before the court reflects that he is still mentally ill and that he is a danger to himself. The record further reflects that respondent's current level of "dangerousness" is dependent on his continued compliance with taking his medication and his abstinence from the use of alcohol and illicit drugs. Finally, it is clear from the record that respondent is in need of ongoing treatment and supervision to ensure his medicine compliance and abstinence from alcohol and illicit drugs.

Respondent argues that the Supreme Court's recent decision in *Foucha* requires that he be given his outright discharge. Foucha, a criminal defendant, who was acquitted by reason of insanity, was committed as MI & D. —— U.S. at ——, 112 S.Ct. at 1782–83. At some point during the commitment, Foucha was determined to no longer be mentally ill. *Id.* The Court stated that due process requires the release of an individual committed as MI & D when that individual is either no longer mentally ill or is no longer a danger to "himself or society." *Id.* —— U.S. at ——, 112 S.Ct. at 1784 (quoting *Jones,* 463 U.S. at 368, 103 S.Ct. at 3052). Because Foucha was no longer mentally ill,

the Court held that due process required his release. *Id.* —— U.S. at ——, 112 S.Ct. at 1787. The Court noted that due process requires that the nature of the commitment bear some reasonable relation to the purpose for which the individual is committed. *Id.* —— U.S. at ——, 112 S.Ct. at 1783.

This case concerns whether the state can require a person committed as MI & D to prove that he is capable of handling less restrictive living situations before complete discharge. *Foucha* dealt with whether an insanity acquitee who was no longer insane was to remain institutionalized or be released without restriction. The present case does not concern such a black or white decision, but rather involves a provisional discharge subject to evaluation over a period of time.

■■■ Thus, the question for us is whether the discharge provisions of Minn.Stat. § 253B.18, subd. 15, bear some reasonable relationship to the purpose for which respondent was committed. Based on respondent's current condition, including his mental illness, his need for treatment and supervision, his inability to adapt to open society, his current dangerousness to himself, and the potential for danger to others if he does not continue to take his medication and abstain from the use of alcohol and illicit drugs, we conclude that requiring respondent to utilize the discharge provisions of Minn.Stat. § 253B.18, subd. 15, bears a reasonable relationship to his original commitment as MI & D. Gradually reintegrating respondent into society through the use of the provisional discharge procedures allows him to demonstrate that he can successfully adjust to open society while allowing the County to provide for the public's safety through monitoring his progress and providing needed services. As he adjusts to each less restrictive living arrangement, respondent will establish his ability to live in open society and at the same time alleviate the public safety concerns which resulted in his initial commitment. We therefore hold that Minn.Stat. § 253B.18, subd. 15, as applied to respondent, comports with due process under both the federal and state constitutions.

We note that our result would be the same under a higher standard of scrutiny. The

state has a compelling interest in protecting a person who is mentally ill and dangerous to himself as well as in protecting society from a person who is mentally ill and dangerous to others. It is further true that no alternative to the MI & D discharge procedures would offer the same protection while allowing an individual so committed to gradually obtain greater degrees of personal freedom through the provisional discharge procedures of Minn.Stat. § 253B.18, subd. 8. A critical aspect of these procedures is that Minn.Stat. § 253B.18, subd. 5, permits an individual to petition for a provisional discharge at any time and further requires a special review board to give the petition a timely hearing.

The existence of the provisional discharge procedures is critical to our result under any level of scrutiny. These procedures are better suited to a determination of the capability of a person who has been committed as MI & D for living in open society than formal adversarial procedures initiated solely by the passage of time. The provisional discharge procedures do, in a sense, place the burden of proving the MI & D designation no longer applies on the person committed, but that burden is one the patient meets by successfully adjusting to living situations that gradually afford greater personal liberty. And, as the patient believes him or herself ready for a less restrictive placement, the patient needs only file a petition to initiate a hearing.

We would be concerned if provisional discharge were denied without requiring those opposing the petition to establish that the individual is unable to handle a less restrictive living situation. We would also be concerned were the individual denied the assistance of counsel in opposing the review board's denial. As this court noted in *In re Harhut*, 385 N.W.2d 305, 312 (Minn.1986), with regard to an individual committed to a state hospital as mentally retarded, an individual committed as MI & D who desires release should have the assistance of counsel, and moreover counsel who is regularly informed about the individual's condition.

■ Respondent next contends that because the state categorizes him as MI & D and requires him to use the MI & D discharge procedures instead of the MI discharge procedures, even though he is no longer dangerous to others, his right to equal protection is violated. He argues that it is unfair to place more stringent discharge requirements on someone committed as MI & D, but no longer dangerous to others, than are placed on someone simply committed as MI.

■ Equal protection requires that persons similarly situated be treated similarly. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982); *In re Harhut*, 385 N.W.2d at 310. For non-suspect classifications, legislation that distinguishes between similarly situated persons must be rationally related to a legitimate public purpose in order to withstand equal protection review. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985). Respondent's equal protection argument fails because his history of dangerousness and his commitment as MI & D mean that he is a greater threat than someone committed as MI. Thus, respondent is not similarly situated to someone committed as mentally ill. Further, requiring respondent to comply with the more stringent MI & D discharge provisions, is rationally related to the state's legitimate public protection interest.

The state owes the community a higher degree of protection from someone committed as MI & D than from someone committed as MI. This duty continues even after the person is no longer dangerous to others. Although respondent currently may not be dangerous to others, he remains dangerous to himself and without supervision and monitoring to ensure that he complies with taking his medication and abstains from the use of alcohol and illicit drugs, a very real risk exists that respondent may again become dangerous to others. Such a risk is sufficient to provide the state with a rational basis for differentiating between respondent and people committed as MI. Thus, requiring respondent to utilize the MI & D discharge procedures does not offend his right to equal protection because the procedures are rationally related to the state's legitimate public safety interest. At this stage, provisional discharge to a Rule 36 facility is the

least restrictive means available to ensure the public's and respondent's protection while giving respondent greater freedom. Presumably, if and when respondent establishes that he is capable of making an adequate adjustment to the structured living environment, he will be ready for placement in an even less restrictive environment and eventually may receive a full discharge from his commitment.

The court of appeals is reversed.

WAHL, J., took no part in the consideration or decision of this case.