**Raymond D. IRWIN, Appellant,**

v.

**Kevin GOODNO, Commissioner of Human Services, Respondent.**

No. A04–751.

Court of Appeals of Minnesota.

Sept. 28, 2004.

Lisbeth J. Nudell, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, Barbara E. Berg, Assistant Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Theresa F. Couri, Assistant County Attorney, Minneapolis, MN; and Robert M.A. Johnson, Anoka County Attorney, Paul C. Clabo, Assistant County Attorney, Anoka, MN, for respondent.

Considered and decided by
TOUSSAINT, Chief Judge;
HALBROOKS, Judge; and ANDERSON, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant Raymond D. Irwin, who is indeterminately committed as mentally ill and dangerous and as a psychopathic personality, appeals from a decision by the judicial appeal panel. The appeal panel dismissed for lack of subject-matter jurisdiction his petition for rehearing and reconsideration of the order of the Commissioner of Human Services denying his petition for discharge from his commitment as mentally ill and dangerous. Because the appeal panel had subject-matter jurisdiction to address Irwin's petition, we reverse and remand for a hearing and decision on the merits.

## FACTS

Raymond Irwin has a long and extensive history of sexual misconduct, other criminal behavior, and mental illness. In his most recent convictions, he was sentenced to 30 months for burglary and 152 months for criminal sexual conduct that occurred in 1984. *State v. Irwin,* 379 N.W.2d 110, 112–13 (Minn.App.1985), *review denied* (Minn. Jan. 23, 1986). In 1993, shortly before his scheduled release date, the county filed a petition for his commitment as a psychopathic personality (PP), and then filed an amended petition also seeking his commitment as mentally ill and dangerous (MI&D). After an initial and a review hearing, he was committed as PP

and MI&D for an indeterminate period, and this court affirmed. *In re Irwin*, 529 N.W.2d 366, 376 (Minn.App.1995), *review denied* (Minn. May 16, 1995).

In 2002, Irwin petitioned the Commissioner of Human Services for discharge from his MI&D commitment, but did not seek relief from his PP commitment. After a hearing, the special review board issued findings and recommended denying the petition, and the commissioner did so. When Irwin petitioned the judicial appeal panel for rehearing and reconsideration of the commissioner's decision, the commissioner moved to dismiss the petition for lack of subject-matter jurisdiction. The appeal panel granted the motion, and this appeal followed.

## ISSUE

Did the judicial appeal panel err in dismissing appellant's petition for lack of subject-matter jurisdiction?

## ANALYSIS

Whether a court has subject-matter jurisdiction is a question of law reviewed de novo. *In re Thulin*, 660 N.W.2d 140, 143 (Minn.App.2003). Questions of statutory interpretation are also reviewed de novo. *In re Senty–Haugen*, 583 N.W.2d 266, 268 (Minn.1998).

Subject-matter jurisdiction is defined as "not only authority to hear and determine a particular class of actions, but authority to hear and determine the particular questions the court assumes to decide." *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 432 (Minn.App. 1995) (quotations omitted), *review denied* (Minn. May 31, 1995). "Minnesota courts have consistently recognized that statutory requirements limiting a court's jurisdiction are threshold requirements that must be complied with before a court can exercise jurisdiction." *State v. Rojas*, 569 N.W.2d

418, 420 (Minn.App.1997) (holding that district court may not accept guilty plea without resolving disputed jurisdictional facts as to juvenile's age). "Because subject-matter jurisdiction goes to the authority of the court to hear a particular class of actions, lack of subject-matter jurisdiction may be raised at any time." *Cochrane*, 529 N.W.2d at 432 (citing Minn. R. Civ. P. 12.08(c)). Subject-matter jurisdiction may not be conferred by consent of the parties. *No Power Line, Inc. v. Minn. Envtl. Quality Council*, 262 N.W.2d 312, 321 (Minn. 1977). If the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Minn. R. Civ. P. 12.08(c).

District courts are courts of general jurisdiction and have the power to hear all types of civil cases, with a few exceptions, and appellate jurisdiction as prescribed by law. Minn. Const. art. VI, § 3; *see* 1 Douglas D. McFarland & William J. Keppel, *Minnesota Civil Practice* § 711 (3d ed.1990). Other courts are courts of limited jurisdiction. 1 McFarland, *supra,* § 711. For example, conciliation courts may only hear cases involving controversies that do not exceed a set amount. *Id.;* Minn.Stat. ch. 491A (2002).

Minnesota law provides the statutory framework setting out the subject matter jurisdiction of the judicial appeal panel. A patient committed as mentally ill and dangerous (MI&D) for an indeterminate period "shall be transferred, provisionally discharged or discharged, only as provided in [Minn.Stat. § 253B.18]." Minn.Stat. § 253B.18, subd. 3 (2002). To obtain a discharge from the commitment, the patient must first petition the Commissioner of Human Services. *Id.,* subd. 5(a) (2002). A hearing is held before a special review board, which then makes a recommendation to the commissioner. *Id.,* subd. 5(c) (2002). The commissioner may not discharge the patient unless, after a favorable

recommendation by the special review board, there is a determination "that the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." *Id.*, subd. 15 (2002).

> In determining whether a discharge shall be recommended, the special review board and commissioner shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

*Id.* If the commissioner denies the petition, the patient may then petition the judicial appeal panel for rehearing and reconsideration of the decision. Minn.Stat. § 253B.19, subds. 1, 2 (2002).

■ When the commissioner denied Irwin's petition for discharge of his MI&D commitment, he petitioned the judicial appeal panel for rehearing and reconsideration. The appeal panel then had subject-matter jurisdiction to consider this general class of action.

■ The next question, then, is whether the appeal panel had "authority to hear and determine the particular questions the court assumes to decide." *Cochrane*, 529 N.W.2d at 432 (quotations omitted). The appeal panel ruled that because Irwin was seeking alteration of his commitment status from MI&D and PP to only PP, it lacked jurisdiction to grant him the relief he sought.

Irwin argues that the appeal panel erred because he is seeking a determination on his petition for discharge from his MI&D commitment, which he contends the appeal panel had authority to hear. On the face of his petition, Irwin is seeking discharge and he took the statutorily mandated steps to do so under Minn.Stat. §§ 253B.18, 253B.19. He asserts that he is prepared to come forward with evidence of the factors in Minn.Stat. § 253B.18, subd. 15, necessary to support his argument that his MI&D commitment should be discharged.

The commissioner, however, argues that Irwin's petition does not represent the factors for discharge and that he is really seeking "alteration" of his commitment status, and that the appeal panel does not have jurisdiction over such a question. He analogizes the issue to cases in which persons committed as MI&D sought to have their status "altered" to MI. *See In re K.B.C.*, 308 N.W.2d 495, 498 (Minn.1981) (addressing earlier version of commitment statute); *see also Lidberg v. Steffen*, 514 N.W.2d 779, 782–83 (Minn.1994) (addressing current version of statute). The commissioner also cites the fact that when first enacted, Minn.Stat. § 253B.18, subd. 3, authorized the alteration of the commitment status of one committed as MI&D, but the next year the legislature deleted the alteration provision. 1983 Minn. Laws ch. 251, § 20.

In *Lidberg*, the patient was committed as MI&D. 514 N.W.2d at 781. Later, the commissioner changed the patient's commitment status to MI, with the proviso that if he sought discharge, he would have to meet the MI&D procedures for discharge. *Id.* When the patient later sought discharge, he challenged the application of the MI&D procedures. The supreme court rejected his arguments, ruling, in relevant part, that because he was initially committed as MI&D, requiring him to utilize the MI&D procedures did "not offend his right to equal protection because the procedures are rationally related to the state's legitimate public safety interest." *Id.* at 784. The commissioner contends that just as those who are committed as MI&D cannot alter their commitment sta-

tus to only "MI," so, too, Irwin's status cannot be altered from MI&D and PP to PP only.

In addressing the commissioner's argument, we first look at the relationship between an MI and MI&D commitment. One who is committed as only MI is one who has a substantial psychiatric disorder and "poses a substantial likelihood of physical harm to self or others as demonstrated by" a failure to obtain necessities or a recent attempt or threat to physically harm self or others. Minn.Stat. § 253B.02, subd. 13(a) (2002). One committed as MI&D is one who is not only mentally ill, but who as a result "presents a clear danger to the safety of others" as shown by the fact that the person "has engaged in an overt act causing or attempting to cause serious physical harm to another" and there is a substantial likelihood the person will do so in the future. Minn.Stat. § 253B.02, subd. 17 (2002). Thus, both commitments require mental illness, but MI&D requires a showing of a higher degree of dangerousness than MI. *In re Kottke,* 433 N.W.2d 881, 884 (Minn. 1988).

In contrast, commitment as a psychopathic personality is not a variation of an MI&D commitment, but instead requires a showing of distinct factors. Irwin was committed as a PP, upon a showing of (a) a habitual course of misconduct in sexual matters; (b) with an utter lack of power to control sexual impulses; and (c) as a result, inflicting injury on the objects of "uncontrolled and uncontrollable desire." *See Irwin,* 529 N.W.2d at 374 (citation omitted). Minn.Stat. § 526.09 (1992).[1] Consequently, this is not a situation in which Irwin is attempting to "alter" an MI&D commitment. Because the question here is not whether Irwin can "alter" his commitment, but whether he can meet the standards for discharge under Minn.Stat. § 253B.18, subd. 15, he is entitled to an evidentiary hearing and decision on his petition for discharge.

## DECISION

The appeal panel decision is reversed and the matter is remanded for an evidentiary hearing and decision on Irwin's petition for discharge.

**Reversed and remanded.**

---

1. Since Irwin's commitment, the legislature has recodified the PP law and renamed the commitment "sexual psychopathic personality." 1994 Minn. Laws 1st Spec. Sess. ch. 1, art. 1, §§ 2, 4, 6.